TO: Clerk,

RE: New Complaint

Please file the enclosed Complaint on behalf of Plaintiffs Quintez Talley, Pennsyluanians with Mental Illness, and Minorities of Pennsyluania.

Thank you for your attention to this matter.

Respectfully submitted,

D / June 6, 2022

s/ Quintin Talleel

Quintez Talleel - KT5091
48 Overlook Drive
Labelle, Pa 15450

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

QUINTEZ TALLEY; PENNSYLVANIANS WITH
MENTAL ILLNESS; and, MINORITIES OF
PENNSYLVANIA,
   Plaintiffs,

v.

COMMONWEALTH OF PENNSYLVANIA; SUPREME COURT OF
PENNSYLVANIA; CITY OF PHILADELPHIA; DEFENDER'S
ASSOCIATION OF PHILADELPHIA; COURT OF COMMON PLEAS
OF PHILADELPHIA; DISTRICT ATTORNEY'S OFFICE OF
PHILADELPHIA; DISTRICT ATTORNEY SETH WILLIAMS; D.A.
LAWRENCE S. KRASNER; ASSISTANT DISTRICT ATTORNEY
KENDRA McCRAE; A.D.A. ZACHARY F. MATTIONI; ROBERT
LISTENBEE; MRS. ELLEN T. GREENLEE; PUBLIC DEFENDER
JOHN KONCHAK; JUDGE WILLIAM J. MAZZOLA; JUDGE
GENECE E. BRINKLEY; SUPERIOR COURT OF PENNSYLVANIA;
JUDGE BOWES; JUDGE STABILE; JUDGE COLINS; COURT OF
COMMON PLEAS, FAYETTE COUNTY; FAYETTE COUNTY,
PENNSYLVANIA; FAYETTE COUNTY'S DISTRICT ATTORNEY'S
OFFICE; A.D.A. SEAN LEMENTOWSKI; ADA WENDY O'BRIEN;
PRODEN & O'BRIEN, LLC; JUDGE LINDA R. CORDARO; CENTRE
COUNTY COURTHOUSE; CENTRE COUNTY, PENNSYLVANIA; JUDGE
THOMAS KING KISTLER; JONATHAN D. GRINE (JUDGE);;
PAMELA A. RUEST; BRADLEY P. LUNSFORD; J. MICHAEL
WILLIAMS; ALLEN SINCLAIR; STEVEN LACHMAN; DISTRICT
ATTORNEY'S OFFICE OF CENTRE COUNTY; CENTRE COUNTY'S
DEFENDER ASSOCIATION; D.A. STACY PARKS-MILLER; ADA
LINDSEY CATHERINE FOSTER; ADA DANIEL McKENRICK; CHIEF
DEFENDER DAVID CROWLEY; PUBLIC DEFENDER CASEY M.
McCLAIN; PENNSYLVANIA DEPT. OF CORRECTIONS; TAMMY
FERGUSON; LT. WILLIAM FOSTER; CAPT. GLENN IRWIN;
THOMAS SUCHTA; ROBERT HEWITT; THOMAS GERALD LYKENS;
DAVID PATRICK LINK; MICHAEL WORSTELL; MICHAEL
LEFEBVRE; BENARD KARABINOS; ROBERT WILLIAMSON;
STEPHEN PROUDFIT; AMY SCHAUP; CAPT. SALVAY; CAPT.
WILLIAM TOFT; LT. JOSHUA POSKA; LT. FREDRICK ST.
JOHN; SGT. LOUIS DOBISH; C.O. CHAD HARBAUGH; C.O.
ROGER ; C.O. ANDREW HIGINBOTHAM; UNKNOWN ADA;
PENNSYLVANIA STATE POLICE; TPR. ROBERT SCHMID; TPR.
BRIAN WAKEFIELD; TPR. THOMAS STOCK; HARRISBURGG
REGIONAL LABORATORY; GABRIEL LLINAS; JEFFREY A.
WAGNER; PUBLIC DEFENDER MATT JAYNES; DA RICHARD
BOWER; FAYETTE COUNTY'S DEFENDER ASSOCIATION; and,
CHIEF DEFENDER OF FAYETTE COUNTY'S DEFENDER ASSO.,
            Defendants.

CIVIL
ACTION
No.

_____

* JURY
 DEMAND

* CLASS
 ACTION

## COMPLAINT

### I.   INTRODUCTION

1.   This is a case that seeks a redress a statewide system of
slavery and involuntary solitude founded upon the Supreme Court
of Pennsylvania's ongoing refusal to make reasonable modifications

to Pa's Rules of Criminal Procedure, which has become the Common-
wealth of Pennsylvania's "Great Enabler"; providing a virtual
license by which the Commonwealth of Pennsylvania is granted lega
authority to transform it's courtrooms - statewide - into
"Sanctuary's of Discrimination", where the mass incarceration of
Pennsylvania's with Mental Illness ("PMI") has become common
place.

2.    This, in spite of the SCP having long been placed on notice
of how the langauge used in its promulgation of Pa. R. Crim. P.
568(A)(1)(B) has been - and, will likely continue to be -
used as a safeguard, enabling the Commonwealth of Pennsylvania to
morph criminal proceedings into "forums of discrimination" -
without any impunity!

3.    Nonetheless, through its firm stance at the sides of the
many federally funded public entities - unabashfully, doubling as
fronts for racketeering influenced and coorupt organizations -
SCP has made it unambiguously clear where it's interests lie: in
the enslavement, for profit and monetary gain, of PMI.

4.    Quintez Talley is just one of the millions of PMI's who
have found themselves subjected to slavery and involuntaryt
servitude as a result of the conspiratory practices of SCP and
the incalculable number of enterprises invested in ensuring that
this immensely profitable business of legalized, modern day
slavery continues undetered - in spite of its deplorableness!

5.    Specifically, between June 6 - 8, 2012, the Commonwealth, by
and through the City of Philadelphia, armed with the benefit of a
favorable ruling from then- Judge Mazzola, of the Philadelphia
Court of Common Pleas, precluding Talley from presenting his
mental infirmity and/or insanity defense to the jury, maliciously
conspired to prosecute Mr. Talley for conduct that was not an
intentional violation of Pa's Crime Code - but, a symptom of his
mental infirmity, i.e., a suicide attempt.

6.    Compounding this atrocity of discrimination - ten years to
the day - is that Mr. Talley has in fact found himself the victim
of this EXACT same practice  - in the subsequent five (5) crimina
indictments that the Commonwealth has brought against Mr. Talley
since!

7.    First, the Defender Association appointed to represent Mr.
Talley stand idly by, absolutely refusing to raise a mental
inanity and/ or infirmity defense on his behalf. This compels Mr.
Talley to act as his own counsel - just to raise a mental infirmi
/ insanity defense!
8.    Next, Mr. Talley files a notice, pursuant to Pa. R. Crim.
P. 568(A)(1)(b), of his intent to raise the defense of insanity
and/or mental infirmity; a request which the judge presiding over
the proceeding, between the time its filed and when trial com=
menses, ultimately, precludes Mr. Talley from presenting to his
trial jury;
9.    Notwithstanding Rule 568(B)(1)'s instruction that "the
court may exclude entirely any evidence offered by the defendant,
EXCEPT TESTIMONY BY THE DEFENDANT," even, "if the defendant [all
together] fails

together] fails to file and serve a notice of insanity or mental infirmity defense," Id., the United States Supreme Court has long held that the states have an affirmative obligation to accommodate persons with disability in the administration of justice.

10. Finally, Talley not only finds himself precluded from presenting the very defense that Pa's own Rules of Court makes it unambiguously clear that he cannot be precluded from presenting (i.e., insanity or mental infirmity) - which he's filed a prior notice of his intent to present - but, the Commonwealth stands before these same jury's and profess that Talley's suicide attempt was the most despicable of felonies known to man!

11. These practices have been mastered and expertly executed by masters of their trade, who have made a practice of preying upon the millions of PMI's in the pursuit of monetary gain obtained through a fraudulent scheme that culminates in slavery and involuntary servitude.

12. The Commonwealth of Pennsylvania, through conspiratory deeds carried out amongst or between several other public entities - acting as racketeering influenced and corrupt organizations - has time and again used this "formula for discrimination" to transform criminal proceedings into "forums of discrimination".

13. These acts and omissions, coupled with a fiegned ignorance of Title II's mandate to accommodate the disabled in the administration of justice, has resulted in Mr. Talley being subjected to 34-68 years worth of slavery and involuntary servitude, withou being provided with an opportunity to be heard at a meaningful time or in a meaningful manner before before being made into a slave.

14. Simply put, there has been a concerted effort amongst all of the persons, public entities, and organizations herein named to make Mr. Talley and countless PMI's the victim of a practice of legalized, modern day slavery; while using "forums of discrimination" to execute - to successful ends - their "formula of discrimination".

15. These practices not only violate the Fourteenth Amendment's "Anti-Slavery Clause" and the RICO Act's white-slavery prohibitions - but countless other federal and state laws!

II.  JURISDICTION AND VENUE

16. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. It also has supplemental jurisdiction to hear Plaintiff's state-law claims under 28 USC § 1367(a).

17. Plaintiffs specifically alleges claims pursuant to the Americans with Disablities Act ("ADA"), 12132, et seq., the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794(a), et seq., and 42 U.S.C. $ 1983.

18. Plaintiff's claims for injunctive relief are authorized by 28 USC Section 2283, 2284, and Rule 65 of the Federal Rules of Civil Procedure.

19. Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

20. The Eastern District of Pennsylvania is an appropriate venue under 28 U.S.C. § 1391(b)(1) and (2).

III. PARTIES

21. Plaintiff Quintez Talley was at all times relevant to this Complaint a qualified individual with a disability, i.e., mental infirmity, named as the "defendant" in the Commonwealth's criminal prosecution: Commonwealth of Pennsylvania v. Quintez Talley, No. CP-26-CR-2752-2019(hereinafter "Com v. Talley"), who was maliciously denied the right to offer the defense of insanity and /or mental infirmity, though having, pursuant to Pa. R. Crim. P. 568(a), filed a notice of his intent to offer the defense.

22. Plaintiff Pennsylvanians with Mental Illness ("PMI") represents a class of persons whom could find themselves discrimi-nated against on account of conduct that is not an intentional violation of Pa's Crimes Code, but a symptom of their disability, i.e., mental infirmity, when precluded from offering the defense of insanity or mental infirmity to the jury during a criminal proceeding in one of the Commonwealth's courts of common pleas; ultimately, being denied the benefit of the Commonwealth's courts in its administration of justice.

23. Defendant Commonwealth of Pennsylvania ("Com" or "C.P.") was at all times relevant to this Complaint the state/public entity, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ not only responsible for the prosecution of Plaintiff Talley (during Com. v. Talley) and PMI, but also the state/public entity responsible for the prose-cution of any and all Pennsylvanians charged and tried within the Commonwealth.

24. Defendant Supreme Court of Pennsylvania ("SCP") was at all times relevant to this Complaint responsible for the oversight of , administration, and management of the state courts within the Commonwealth; a duty inclusive of promulgating the Pennsylvania Rules of Court ("civil" and "criminal"), which govern the manner in which things are to be carried out within all of Pennsylvania' state courts.

25. Defendant Court of Common Pleas, Fayette County was at all times relevant to this Complaint the public entity/enterprise responsible for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1) the administrative and managerial functions within its court, and 2) the employment of Defendant (Judge) Linda R. Cordaro.

26.  Defendant Court of Common Pleas of Philadelphia ("CCP") was at all times relevant to this Complaint the public entity /enterprise responsible for the oversight, administration, and manageri functions within its courthouse; a responsibility inclusive of employing Defendant (Judges) William J. Mazzola and Genece E. Brinkley.

27.  Defendant Superior Court of Pennsylvania (Super. Pa.") was at all times relevant to this Complaint the public entity/enterprise responsible for the employment of Defendants (Judges) Bowes Stabile, and Colins.

28.  Defendant Fayette County, Pennsylvania ("FCP") was at all times relevant to this Complaint the municipality/public entity /enterprise: 1) responsible for the oversight, administration, and management of Defendant Defendant Fayette County's District Attorney's Office ("DAO") and Fayette County's Defender Association, and 20 the providing of all finances to Defendants DAO and Fayette County's Defender Association.

29.  Defendant Fayette County's District Attorney's Office ("DAO" was at all times relevant to this Complaint responsible for: 10 the employment of Defendants (ADA) Sean Lementowski and Wendy O'Brien, and DA Richard Bower, and 2) the administrative and managerial functions within its office (e.g., policies for hiring training, ort supervising its employees).

30.  Defendant City of Philadelphia was at all times relevant to this Complaint responsible for: 1) the oversight, management, and administrative functions within Defendants District Attorney's Office of Philadelphia ("DAP") and Defender's Association of Philadelphia ("Def. AP"); a responsibility inclusive of  2) providing funding to Defendants DAP and Def. AP.

31.  Defendant District Attorney's Office of Philadelphia was at all times relevant to this Complaint responsible for the employment of (District Attorneys) Seth Williams and Lawrence S. Krasne (ADAs) Kendra McCrae and Zachary F. Mattioni; and, for some time now, Defendant Robert Listenbee.

32.  Defendant Defender's Association of Philadelphia was at all times relevant to this Complaint responsible for the employment of (Defender) Mrs. Ellen T. Greenlee, (then-Chief Defender) Robert Listenbee, and (Public Defender) John Konchak.

33.  Defendant Proden & O'Brien, LLC ("POB") was at all times relevant to this Complaint the Limited Liability Corporation which Defendant Wendy O'Brien acted both through and on behalf of; Possibly as one of it Owners and/or original founders, as well.

34.  Defendant Fayette County's Defender Association was at all times relevant to this Complaint responsible for the employment of it's Chief Defender and Matt Jaynes.

35.  Defendant Harrisburg Regional Laboratory ("HRL") was at all times relevant to this Complaint responsible for the employment of Defendants Gabriel Llinas and Jeffrey Wagner.

36. Defendant Pennsylvania Dept. of Corrections ("DOC") was at all times relevant to this Complaint responsible for the employment of: (Defendants) Tammy Ferguson, Lt. William Foster, Capt. Glenn Irwin, Thomas Suchta, Robert Hewitt, Thomas Gerald Lykens, David Patrick Link, Michael Worstell, Michael Lefebvre, Bernard Karabinos, Robert Williamson, Stephen Proudfit, Amy Becker, Joshua Glessner, CISM Travis Knapp, PSS Amy Schaup, Capt. Salvay, Capt. William Tift, Lt. Joshua Poska, Lt. Frederick St. John, Sgt. Louis Dobish, C.O. Chad Harbuagh, C.O. William Rogers, and C.O. Andrew Higinbotham.

37.  Defendant Pennsylvania State Police ("PSP") was at all times relevant to this Complaint responsible for the Employment of ("Troopers") Robert Schmid, Brian Wakefield, and Thomas Stock.

38.  Plaintiff Minorities of Pennsylvania ("MP") are a class of person(s), outside of the caucasian race, who, as citizens of the Commonwealth of Pennsylvania, could find themselves criminally prosecuted, in any of the Commonwealth's sixty (67) county's, and subjected to having to select their jury from venires that grossly underrepresent them; specifically, venires comprised of ALL whites.

39.  All of the individuals herein named as "defendants" are sued in both their "personal/individual" and "official" capacities.


IV.  FACTS

40.  During his June 6-8, 2012 Jury trial, resulting from his October 23, 2011 suicide attempt, by way of fire, Plaintiff Talley ("Talley") was precluded from: 1) informing the jury that the incident for which he'd been charged was a suicide attempt, and 2) presenting an insanity or mental infirmity defense, though having previously filed notice of his intent to present said defendse ▓▓▓▓▓▓ (prior to November 15, 2011).

41.  Plaintiff Talley's 6/6-8/2012 jury trial was presided over by Defendant Mazzola; the same judge who'd denied Talley his right to raise an insanity or mental infirmity defense.

42.  Defendant Mazzola, as is required of a sitting judge, was well aware of the Pennsylvania Rules of Court; specifically, Pa. R. Crim. P. 568(B)(1), when he entered his order denying Talley the right to present ▓▓▓ an insanity or mental infirmity defense to his jury at trial.

43.   Pa. R. Crim. P. 568(B)(1) specifically states:

> "If the defendant fails to file and serve a notice of
> insanity or mental infirmity defense, or a notice of
> expert evidence of a mental condition as required by
> this rule, the court <u>may</u> exclude entirely any evidence
> offered by the defendant for the purpose of proving the
> defense, <u>except testimony by the defendant</u>, may grant a
> <u>continuance</u> to enable the Commonwealth to investigate
> such evidence, or may make any other order as the interest
> of justice require."

44.   Accordingly, when Defendant Mazzola entered his order pre-
cluding Talley from presenting his insanity and/or mental infir-
mity defense to Talley's trial jury (on 6/6-8/2012), Defendant
Mazzola was more than aware that he has contravening what the
Pa. Rules of Criminal Procedure instructed.

45.   "Here, despite the Commonwealth's [procedural] commands and
the protections they were intended to provide," Geness v Cox, 902
F.3d 344, 362 (3d Cir. 2018), e.g., "the right to a forum free of
disability discrimination," Id. at 361, Talley was nonetheless
denied the benefit of Pa. R. Crim. P. 568(b)(1), and, ultimately,
discriminated against on account of his disability, i.e., mental
infirmity, when made to relinguish his right to not only give
testimony in support of his insanity/mental infirmity defense -
but, outright denied the ability to present the defense all
together!

46.  Noteably, Pa.R.Crim.P. 568(B)(1) is a "procedural protection...
designed to...safeguard the fair and efficient functioning of
the criminal justice system, and denial of those protections,
leading to the unjustified institutional[ization]...of prrsons
with disabilities, is a form of discrimination," Geness, 902
at 362.

47.   Additionally, even prior to Defendant Mazzola's November 15,
2011 ruling, Talley's lead defense attorney, Defendant Konchak,
of Defendant Def. AP, never raised - or, consulted with Talley
about the possibility of raising - an insanity or mental infirmity
defense on Talley's behalf.

48.   Defendant Konchak, as well as any of the other public defen-
ders acting on Talley's behalf (e.g., Defendants Listenbee, Mrs.
Greenlee, etc.)never raised  or filed a notice of the intent to
raise an insanity or mental infirmity defense on Talley's behalf
during the requisite "pretrial stages", enabling Defendants
Mazzola and McCrae to First, relie on, then, preclude Talley
from raising the defense, pursuant to Pa.R.Crim.P. 568(A)(1).

49.   Specifically, Pa.R.Crim.P. 568(A)(1) states:

> "A defendant who intends to offer at trial the
> defense of insanity or mental infirmity shall

file with the clerk of courts not later than the time required for filing an omnibus pretrial motion provided in Rule 579 a notice of the intention to offer the defnse of insanity or mental infirmity."

50.  Pa.R.Crim.P. 579(A) provides that "the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, <u>unless opportunity therefor did not exist</u>" e.g., here, wheree Talley could not possibly have filed the notice while being represented by the Def. AP - yet, filed it almost immediately after being granted leave to proceed pro se.

51.  Notwithstanding the question of whether or not the notice was filed in accoRdance to Pa.R.Crim.P. 579 or not, the Pennsylvania RulEs of Criminal Procedure makes it unambiguously clear that the most a court <u>MAY</u> do is "exclude entirely any evidence offered by the defendant for the purpose of proving the defense, <u>EXCEPT TESTIMONY BY THE DEFENDANT[1]</u>" Pa.R.CRIM.P. 568(B)(1).

52.  Accordingly, when a judge in a criminal proceeding conducted within the Commonwealth of Pennsylvania outright denies a criminal defendant from presenting an insanity or mental infirmity defenSe - wheter or not they file a notice, See Pa.R.Crim.P. 568 (B)(1) - that particular judge has not only acted outside of their jurisdiction, they have outright caused that defendant, i.e., Talley and/or PMI, to be discriminated on accoun t of their disability, i.e., mental infirmity!

53.  The language employed by Defendant SCP - a receipent of federal funding - in it's promulgation EXPRESSLY violates the Rehabilitation and Americans with Disabilities Acts mandate to accommodate persons with disabilities in the administration of justice. See <u>Tennessee v. Lane</u>, 541 U.S. 509, 533 (2004)

54.  Importantly, during the "omnibus pretrial" motion phase, Talley was being represented by Defendant Def. AP, an organization that was funded by the City of Philadelphia; yet, being operated by Defendants Listenbee and Greenlee.

55.  Talley, a Pennsylvania who has NEVER been able to afford the costs associated with obtaining private counsel, has continuously found himself represented by a "Defender Association" (of Pennsylvania) in ALL of his Criminal proceedings.

56.  The common theme heard by Talley during and throughout the timeframes that he was being represented by these "associations" is they were so underfunded that they could not possibly be exapected to foot the bill for obtaining the evaluation - let alone, opinion - from a certified psychologist!

57.   In fact, while being represented by the Defender Association of Centre County, after Talley informed his then- Defense counsel, Defendant McClain, that he 1) wished for Defendant McClain to raise a insanity or mental infirmity defense on his behalf, and 2) that this required for Defendant McClain to obtain Talley's mental health records from the DOC, Defendant McClain came back to Talley and told him that, because his association would not be paying the $600 fee the DOC was asking to provide them with a copy of those records - this defense would not be raised on Talley's behalf;

58.   The situation was so bad, after Talley addressed having been told this by Defendant McClain in open court, Defendant McClain basically talked Talley into entering an appearance on his own behalf (i.e., proceed pro se) - just so Defendant McClain could justify having previously refused to raise the defense!

59.   Unsurprisingly, with Talley having been precluded from either informing the jury at his June 6-8, 2012 trial that the conduct from which he'd been charged was a symptom of his mental infirmity, not an intentional violation of the law or even presenting the insanity or mental infirmity defense altogether, on June 8, 2011 Talley was found guilty!

60.   After a few postponements, on November November 21, 2013, Defendant Mazzola sentenced Talley to: 3-6 years (for the Arson charge), and two years of probation for the risking a castastrophe, institutional vandalism, and reckless endangerment ("REAP") charges eache, to run concurrent to  with the three (3) to six (6 years on the arson.

61.   After a direct appeal, the Pennsylvania Superior Court ("Super. Pa.") reversed the lower court's ruling as to the failur to prevent a catastrophe charge brought against Talley; yet, due to the fact that Talley took a Post Conviction Relief Act ("PCRA" appeal, the action continued.

62.   On August 20, 2016, defense attorney, David Rudenstein, who'd been appointed by the Court ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to represent Talley during the PCRA phase, filed an amended petition under post-conviction relief act on Talley's behalf.

63.   The gist of Mr. Rudenstein's motion was that, because Talley's defense counsel had failed to raise an insanity or mental infirmity defense on Talley's behalf, Talley was entitled to relief; but, Mr. Rudenstein also requested of the court to provide him with funds to obtain a mental health evaluation of Talley.

64.   Noteably, some time in between Mr. Rudenstein's 8/20/16 filing and Defendant Mattioni's June 6, 2019 filing, the lower court had actually entered an order authorizing for Mr. Rudenstein to be provided with the funds he'd need to have a mental health evaluatioin of Talley conducted; yet, for reasons unknown to Talley, said evaluation was never conducted?

65.  On June 6, 2019, inspite of the fact that the PRCA motion previously filed by Mr. Rudenstein on behalf of Talley rightly alleged that Talley: 1) had been represented by counsel at trial and 2) that said counsel failed to raise an insanity or mental infirmity defense on Talley's behalf; M Defendant Mattioni, acting on behalf of the Commonwealth, submitted a document to Defendant Brinkley where he falsely alleged that Talley had NOT been represented by counsel at trial and that Talley had been competent to stand trial;

66.  Ironically, by the time that Defendant Mattioni filed this letter to Defendant Brinkley requestuing for Talley's PCRA petiti to be dismissed, alleging that Talley had NOT been represented by counsel at trial, one of the lawyers who'd represented Talley at trial, Defendant Listenbee, was now not only working for the DAP - he was actaully Defendant Mattioni's boss!;

67.  Adding insult to injury, while alleging (in his letter to Defendant Brinkley) that Talley had in fact  NOT been represented by counsel at trial - Defendant Mattioni  EXPRESSLY stated in his letter that Defendant Listenbee - who'd obviously told Defendant Mattioni of the circumstances surrounding Talley's 6/6-8/2011 tri trial - was standby counsel!

68.  In spite of the fact that Talley's motion did not focus on whether he was competent to stand trial, but on the fact that at the time Talley committed the acts he'd ultimately had been charged for, he was acting as a result of his mental infirmity, i.e., a suicide attempt, Defendant Brinkley nonetheless, feihning ignorance to the nature of the arguments made by Talley by way of his PRCA petition - ruled in favor of the Commonwealth!

69.  Defendant Brinkley has actually made national news for the manner in which she handled rapper "Meek Mills" case; clearly, Defendant Brinkley's practices are very much so in question.

70.  On June 10, 2019 Defendant Brinkley filed a notice of her intent to dismiss Talley's PCRA petition.

71.  On July 10, 2019, in spite of Talley's very well grounded amended PCRA petition (filed pro se), Defendant Brinkley, with absolutely no concern for the fact that her - as well as her predecessor (Defendant Mazzola) - were CLEARLY trampling all over Talley's RA and ADA rihhts with their rulings, dismissed Talley's PCRA petition!

72.  On January 21, 2020, with the aid of appointed counsel (Daniel A. Alverez), Talley appealed his PCRA dismissal to the Super. Pa. This appeal came to be presided over by Defendants Bowes, Stabile, and Colins.

73. Defendants Bowes, Stabile, and Colins, in spite of the fact
that Defendant Mattioni's letter to the judge (Defendant Brink-
ley) hadn't even addressed the substance of Talley's PCRA peti-
tion, nonetheless ruled in favot of the Commonwealth! Again,
making it abundantly clear that Talley's RA and ADA rihhts were
NOT going to be respected!

74. On October 22, 2020 Mr. Alvarez submitted to the SCP what is
known as "petition for allowance of appeal" on Talley's behalf.

75. On March 24, 2021 Defendant SCP, refusing to correct this
clear RA and ADA violation, denied Talley's petiton - without
even providing Talley an opportunity to be heard!

76. It should be noted that at the time Defendant SCP denied
Talley's petition, Talley had already placed tha SCP on notice
of the manner in which the c the language they'd used in their
proulgation of Pa Rules of Criminal Procedure 568 and 579 were
being used to installate the Commonwealth  enasb enable the
Commonwealth to turn criminal proceedings into "forums of dis-
crimination" - by way of another lawsuit!

77. For purposes of this Complaint, Talley (as well as Plaintiff
PMI and MP) herein incorporate by reference any and ALL facts
set forth in Talley v. Supreme Court of Pennsylvania, No. 17-
1632 (M.D. Pa.) (at Doc. 63) and Talley v. Commonwealth of
Pennsylvania, No. 21-1208 (W.D. Pa.) (at Doc. 1).

78. Specifically, because the District Court (in Supreme Court
of Penn.) dismissed Talley's RICO Act claims in that case without
prejudice, Talley ONLY repleads RICO Act claims
against the Defendants named in this case that were also named in
that case;

79. The same is said as to the defendants in this case that were
also named in Commonwealth of Pennsylvania; for, in that case,
Talley nevere raised a RICO act claim. So, he is herein bringing
ONLY a RICO act claim against the defendants herein named that
were also named in COmmonwealth.

V.    LEGAL CLAIMS


80.  AMERICANS WITH DISABILITIES AND REHABILITATION ACTS
     Plaintiff herein brings ADA and RA claims against each and
every Defendant to this Complaint who was NOT previously named
as a Defendant in the other two lawsuits (cited in paragraphs
78 and 79 above).

81.  Racketeering INFLUENCED AND CORRUPT ORGANIZATION ACT

     Plaintiffs also bring RICo Act claims against all of the
herein named defendants ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



82.  Plaintiffs also bring Fourth, Eighth, Thirteen, and Fourteenth Amendment of the United States Constitutional Claims against ALL the Defendants not named as defendants in Talley's other two lawsuits .

83.  Talley brings state law claims for "malicious prosecution" (as to his failure to prevent a catastrophe charge; that was over turned for the Superior Court), against Defendants City of Phila- delphia, McCrae, Seth Williams.

VI.  RELIEF

84.  Plaintiffs seek declaratory, injunctive, punitive, and compen — satory relief against all of the herein named defendants.

D/  6/16/2022

S/ Quintez Talley
Quintez Talley-KT5091
48 Overlook Drive
Labelle, Pa 15450

Inmate Mail
PA Department of Corrections

Quintez Tallely- KT5091
48 Overlook Drive
Labelle, Pa 15450

US POSTAGE
$ 001.76⁰
ZIP 15450
02 4W
0000354482 JUN 07 2022

attn: Clerk's Office
2609 U.S. Courthouse
601 Market Street
Philadelphia, Pa 19106



RECEIVED
JUN 13 2022